the two cases listed for this morning, I know that the courtroom is a bit more crowded than what we're accustomed to, even when we're here in Pittsburgh. We are here in Pittsburgh, which is not the ordinary course, and in fact, I've been around long enough, having spent 15 years in this building, recall, when there were no regular Pittsburgh sittings, but we have been having them for some years, and I know I certainly speak for my Pittsburgh colleagues that it is our intention, notwithstanding the annual budgetary strains that we all experience, that we continue to have Pittsburgh sittings. Because we're having a Pittsburgh sitting, it's my understanding that we have a group with us today, and I think Judge Hardiman may have some connection to this group, and so I'd ask him to introduce them and tell Judge Nygaard and I just who it is who actually wants to watch this boring group of three people conduct their business. Well, thank you, Judge Smith. We have a group of students from Fox Chapel High School, guided by their Advanced Placement Government teacher, Mrs. Jen Klein, and accompanied also by the English teacher, AP English teacher, Ms. Russ. So, we have some very intelligent students here, notwithstanding the fact that one of them is my offspring, and I know that they're looking forward to both cases with interest, and I just want to add that this is an era where it's frequently lamented the state of our civics education, and fortunately, for these students, they have the privilege of being instructed by such an energetic, brilliant, and thoughtful teacher. So, I can assure the panel that the civics aptitude of this group is about as high as it gets, thanks to the quality of the instruction. So, welcome. That's great to hear, Judge Hardiman, and I know you've said many times that your son has taught you a lot, so I realize that he must be deriving a great deal from this class. All right, we will first call the case of Shuchart versus Obama, I believe. I hope I am pronouncing that correctly. Mr. Shuchart, do you want to go forward, please, and correct me if I've got the... It's correct. All right, proceed, please. Thank you, sir. May it please the court. Have you reserved time for rebuttal? Yes, I'd like to reserve four minutes. Very good. In 1952, President Truman seized control of the steel mills in the United States. He did so as part of the Korean War under his powers, or claimed powers, as Commander-in-Chief of the United States Armed Forces. That case became known as the Steel Seizure Case. It went up to the United States Supreme Court, and the United States Supreme Court said, no, you as Commander-in-Chief of the United States Army do not have the authority to seize private property of the United States, of its citizens, in order to fight a war, in that case, the Korean War. What we're facing today, 60 years later, is the equivalent of the Steel Seizure Case. Today, the President of the United States is seizing private property of American citizens, and he is doing so, again, under his claimed authority as Commander-in-Chief of the Armed Forces, but this time, it's not a few hundred billion dollars of steel mills. Today, he's stealing the entire e-mail database of the United States. All right. Yes, sir. Assuming that is the case, this matter is before us, on your individual claims, or your claims as an individual plaintiff, in the case of Mr. Schubert, and you are representing yourself in this matter, as is appropriate, and as you are well aware, looming prominently in the matter is an issue of standing, or our issue is standing. Absolutely, sir. And mootness, and another issue that I'm sure we'll ask you about. But just one matter I would like to ask you about at the outset, which is largely factual in nature. Are you now, and have you been in the past, or have you been in the past, a subscriber to Verizon Business Network, or are you merely a subscriber to Verizon cellular? No, Your Honor. I'm not a subscriber to Verizon Business Network. Now, that component would relate to the metadata seizure relating to the telephony claim. That claim has been dealt with by Congress. So do you concede the mootness on the metadata claim? Yes, Your Honor, I do. With respect to the metadata claim. It might have been nice to know that in advance of this argument, but it's good to know it now. Okay. Yes. I'm considering the metadata telephony to be moot at this time. It's not something that I wish to pursue. All right. Good enough. And so that narrows down our inquiry to some of the tough questions that remain, one of which would be since you concede mootness on the telephony metadata claims, we necessarily turn to the PRISM-related claims, right? Yes. How have you demonstrated on the face of your complaint, together with the appendices, the exhibits to the complaint, that you as an individual have standing to raise the PRISM-related intrusions as you would regard them? Okay. All right. There are three federal courts that have found that standing exists in this type of case or cases involving even less particularity than what I'm alleging. Those cases are the Ninth Circuit in the Jewell case has found that there is standing for people who are in exactly the same situation that I'm in, claiming that the e-mail database is being seized and that it's a violation of the Fourth Amendment. But in Jewell there are specific details about the NSA surveillance in a particular facility within a particular time frame related to her communications. Where in your complaint can you show that particularity? Okay. Yes, in terms of particularity, I stand here as the last link in a long chain of a number of people who have risked their lives, who have risked their freedom, and have risked their employment in order to bring Well, this is a safe place. So how about answering Judge Nygaard's question? Okay. All right. I'm working closely with people, with persons who are former staffers of the NSA who are willing to come forward at this time and testify exactly what is going on here. Where is that in your complaint? Okay. I talk about William Binney, a former staffer of the NSA. He has been responsible for training 6,000 people over at the NSA. He resigned his job shortly after 2001 to protest the fact that the full content of e-mail was being collected by the United States government under an executive order without any sort of court supervision whatsoever. No supervision by the FISA court. No supervision by the civilian courts. The executive branch was seizing the entire content of e-mail. Now, why is this a problem? It's a problem because you have individuals in the executive branch who have the authority to get into that e-mail without any kind of warrant, without any kind of authority whatsoever. Has the government conceded at any point that, indeed, the prison program allows them to obtain content, as you allege? The government has not yet conceded that point. That's a factual dispute. They say they're just gathering metadata. You say, I'm afraid to use my law firm's e-mail account because they have it and I have no privacy in my e-mail account. Is that a correct understanding of your point? That's correct. I have no privacy in my e-mail account. No person in this room has privacy in their e-mail account. The investment banks in New York do not have privacy in their e-mail accounts. So is it your argument that there should have been jurisdictional discovery in the district court to get to the bottom of those facts? Yes. Did you argue that to the district court? Yes. It is my argument that there should have been jurisdictional discovery at the district court level. In fact, I did ask the district court. As the D.C. Circuit suggested could be done in Clayman, is that? I'm sorry, I didn't hear the question. As the D.C. Circuit suggested could be done in Clayman? That's correct. There are two circuits that have authorized discovery on jurisdictional issues. One was the D.C. Circuit in the Clayman case. The other one was the Ninth Circuit in Jewell. Let me see if I can narrow things a little bit more, too. With respect to the remaining prison-related claims, are you pursuing your First Amendment claim here? Because in going over your brief again, I was unable to find any argument at all supporting anything other than a Fourth Amendment claim. Yes, Your Honor.  So we can pare it down then to the Fourth Amendment claim, and let me go even farther. The government has raised sovereign immunity, which also is jurisdictional in nature. They did that toward the end of their brief. I think it's page 25, but it's plainly raised, and you filed no reply to that. Should we also assume that sovereign immunity obtains here with respect to any damages claims? And so really what we are only looking at is injunctive relief relative to the prison-related claims. Yes, Your Honor, that is correct. I took a look at the sovereign immunity argument related to my claim for monetary damages. I took a look at that. I deemed the monetary damages argument to be fairly weak, so I am not pursuing monetary damages, and therefore I did not respond to the sovereign immunity. We've whittled things down quite a bit here, then. We're talking solely about a Fourth Amendment relief that would be the injunctive in nature, right? Yes, Your Honor. You want them to stop collecting your emails, your videos, your phone calls. Yes, that is correct. I don't have any problem with them data mining the nation's email database. I think that's a wonderful tool. All right, well, help me out with that. I'm not a computer expert. Your Chairman of the Automation Committee of the United States Judicial Conference, tell me again you're not an expert in that area. Boy, I've been exposed. What's your understanding regarding the distinction between data mining and what you're complaining about in this case? Okay, my complaint is the structure of how this is being done. Right now, the database is being essentially collected, collected meaning that the defendants are grabbing the email and they're putting it into a static database where it can be searched and data mined for, put in the word terrorist or put in the word Osama bin Laden or whatever. It's a static database, but the database is in the hands of the executive branch, and there's no independent authority that's deciding is it okay to search that database. So what's going on? I thought you just said data mining is okay. Yes, data mining is okay. Tell us if you would the factual distinction between what you perceive to be okay and what you perceive to be unconstitutional. Okay, what I'm proposing is a solution similar to the solution that was implemented by Congress with respect to the telephony metadata in the USA Freedom Act. In other words, the database, the static database should be held by the third-party providers, Google, Yahoo, Facebook, and Dropbox. So in other words. And then the government can go access it if and only if they get a FISA warrant to do so? That's right. So in other words, the data is kept safe in a third-party hands. What I call the keys to the kingdom have to be held by a third party, namely the courts or the FISA court. So in other words, the data would be held by Google, Facebook, Dropbox, and if the government, the executive branch, wants to get into it, then they would have to get an independent authority as required by the Fourth Amendment. Without that authority, abuses are already occurring. The employees of the executive branch are getting into this data. They're searching information about their former girlfriends. And this is known. There are reports already saying that this is being done. We know the parade of horribles that has been suggested or at least alleged here. But let me try to understand at this point, given the concessions you've made as to certain claims and jurisdictional issues presented, what do you want us to do? Do you want us to remand to the district court for jurisdictional discovery? Yes, Your Honor. How would that play out at the district court? I mean, that's extraordinarily important, and I'm quite sure that we're going to hear from your colleague on the other side about that. And I don't need to unnecessarily compound my question, but I'm interested in knowing whether or not when such discovery is conducted, which would necessarily involve in-camera proceedings. Yes. What kind of standard are we looking to in terms of what must ultimately be shown for standing in a national security context such as this? And I will be interested in hearing the government's response to this question as well. I'm sure they will want to respond to it. In short, is there any kind of higher standard for purposes of a showing of standing in a case involving intelligence gathering or foreign affairs than there would be in the ordinary case, in the garden variety case where we confront a standing issue? And I raise that question for obvious reasons, but also because of some language in Justice Alito's opinion in Clapper v. Amnesty International where he says, and this is a quote from United States v. Richardson, another Richardson, obviously, than what we face today, relaxation of standing requirements is directly related to the expansion of judicial power, Richardson. And we have often found a lack of standing in cases in which the judiciary has been requested to review actions of the political branches in the fields of intelligence gathering and foreign affairs. What does that mean? What do we derive from that? Yes, and I'm aware of that quote and I've looked at it. Then the Ninth Circuit specifically said that there was not a higher standard for standing in national security case. Now, in that the Clapper v. Amnesty International, the Supreme Court did imply that there is. But on the other hand, there is a balancing that has to be taken into account in terms of the dangers of what the executive branch is threatening to do. So if I don't have standing, then who is going to be here presenting these arguments? As I mentioned before, there have been numerous people who have come forward. They've been chased all over the planet in some instances, threatened with jail, threatened with decades in jail, for bringing this information to the attention of the court. All right, thank you. We will have you back. Thank you, Your Honor. Mr. Whittaker. May it please the Court, Henry Whittaker from the Department of Justice for the Defendants. I think the claims are now narrowed, which is helpful. And I really think that, as narrowed, it's even more clear that the Supreme Court's decision in Amnesty International v. Clapper is absolutely dispositive against the plaintiff's standing in this case. In Amnesty International, the Supreme Court rejected a prospective constitutional challenge. What's prospective about this case? Well, I think, as Mr. Shugart just mentioned, the only claim that is remaining is his prospective Fourth Amendment claim that the PRISM program, operated under Section FISA, Section 702, is unconstitutional. I thought the complaint alleged that his Gmail account and other accounts have actually been gathered. Is that not one of his allegations? Well, that is his allegation. So that's not prospective? The injunctive relief he seeks is prospective, but he is alleging a past harm. Well, right. But in order to get standing, as the Supreme Court made clear in Amnesty International, for his prospective injunctive claims, he would have to show that it is likely that his communications would be subject to surveillance under Section 702 in the imminent future. If he's correct that they've been gathered for the last few years, why wouldn't he be able to satisfy that threshold as a pleading requirement? Well, personally, I don't think he has alleged that as a threshold matter, number one, Your Honor. But number two, under the Lyons case in 1983, the Supreme Court made clear that a past injury is not sufficient in and of itself to show entitlement to prospective relief against injunctive relief against a future injury. So there is that fundamental distinction. Isn't there some temporal relationship, however, that may affect that? That is to say how long ago that may have occurred or whether it happened up until just recently? It might be relevant. But I think the more fundamental point, Your Honor, is that you have to read that allegation in light of not simply the bare words of the complaint, but also in light of the entire complaint, including, as Judge Smith pointed out in the opening, the documents appended to the complaint. So what do you make of those documents? Well, I'm glad you asked that, Your Honor. I'm glad I asked it, too. That's why I asked it. Those documents make clear that PRISM is a program of targeted surveillance, not indiscriminate surveillance, as Mr. Shugart alleges. How do we know that? Why isn't that a factual dispute that needs to be resolved? Well, it's not a factual dispute that needs to be resolved because it's resolved by the plaintiff's own attachments to his complaint. And I would point, Your Honor, to, in particular, the Glenn Greenwald article that he attaches. And that's part of his pleading for purposes of a motion to dismiss. You can look at the appendix. What about the Snowden slides are part as well? Oh, but the Snowden slides and the Glenn Greenwald article, which the Snowden slides are part of that, all reflect on their face that PRISM is a program of targeted, not indiscriminate surveillance. Why not show us that? What about the exhibit attached from the PowerPoint, new collection posture, sniff it all, know it all, collect it all, process it all, blah, blah? Well, but that, which is also mentioned in the Glenn Greenwald article, I believe, is not a suggestion that we are collecting, in fact, under PRISM, all e-mail content. And PRISM is about e-mail content. Just to clarify, we have acknowledged that PRISM does involve the collection of content. That's true. And that's been publicly acknowledged in the PCLOB report and elsewhere. But it is not a bulk content collection program. It is not and has never been. So what of his content are you collecting? Your Honor, there is no indication in any of those attachments that Mr. Shugart's, anything of Mr. Shugart's has ever been collected, let alone that it will be in the imminent future. Just because we are, so it is true. So you can represent to this court without hesitation, you're, as an officer of the court, you're telling us the NSA has never collected any of Mr. Shugart's e-mail, voice, or video data? No. Okay, then how much of it have you collected? Your Honor, there is no indication in those attachments. I didn't ask you what there's no indication of. I'm asking you how much of his data have you collected. And if the answer is I don't know, which I presume the answer is, then that gets me to the question of why don't we need jurisdictional discovery here to figure out whether or not this gentleman has standing. His pleadings and the attachments there, too, contain no indication that anything of his in particular has been collected. Those slides that Your Honor mentioned say that PRISM collection, at most, on their face, that PRISM collection has involved certain providers. That just means that those providers may have received a targeted request. Since you cannot answer here the specific, the highly specific inquiry from Judge Hardiman, why isn't the answer to remand to allow the district court to conduct very narrow standing-related discovery, jurisdictional-related discovery, and have the government do whatever is necessary to be able to come forward and simply by affidavit state we've not inquired into Mr. Shuchard's content in any way? That is a procedure that the Supreme Court and Amnesty International expressly rejected. Did they? I mean, that is, I believe, that was a footnote Justice Alito had in his opinion, wasn't it? I mean, I realize he, but I'm not sure that is precisely what he said, is it? I mean, if you can state by way of affidavit we don't have anything like that, what does that give away? What is the danger to the United States and the intelligence-gathering community for you to say something that simple? Well, I mean, as Justice Alito said in footnote four of that footnote itself, that would enable an individual who is a terrorist to sue us and figure out whether we've ever subjected him to any kind of surveillance. I mean, confirming or denying the existence of surveillance under these highly classified programs is an extremely serious matter of national security. And that's exactly why the Supreme Court and Amnesty rejected that procedure. But more importantly, Your Honor, before, and by the way, the D.C. Circuit did not, in claimants, suggest that jurisdictional discovery would be appropriate in that case. Rather, the D.C. Circuit suggested that a remand might be appropriate to determine whether jurisdictional discovery would be appropriate. It did not decide that it was appropriate in that case, and that's very important, because, in fact, on remand, jurisdictional discovery was actually not even ordered in claimant. And the case kind of went off in a different direction, but we certainly would have resisted jurisdictional discovery in claimant, and certainly the Ninth Circuit in Juul did not in any way suggest that. Before you have jurisdictional discovery or any kind of discovery, you first need to plead a sufficient claim on the face of the complaint. And I thought your argument was that this claim is insufficient because it's a generalized grievance, but we haven't touched on that. Is that not your argument? No, that's not our argument, Your Honor. What's necessary for sufficiency purposes at the pleading stage? Well, I think that if you have an allegation in your complaint that we're collecting all of the nation's e-mail content and then you attach documents to your complaint that makes clear that the programs you have raised do not, in fact, do that, I think you have pleaded yourself out of court, and that complaint is insufficient. How does know-it-all, find-it-all, sniff-it-all, the slide that Judge Smith read, how does that support what you just said? I mean, all is a pretty strong word. That's not a suggestion, Your Honor, with respect, that we are collecting all e-mail content under PRISM. And, in fact, that does not occur. But more broadly, so the slide means the opposite of what it says. That's your argument? I don't think that that is what the slide means, Your Honor. Doesn't the slide, if not corroborate, at least provide greater weight or even specificity than the mere allegation within the complaint itself? No. It doesn't add any force at all to that? No, but more importantly, even beyond the pleading, Your Honor, this is a 12B1 motion to dismiss for lack of jurisdiction. In that posture, you are permitted to consider not only documents within the four corners of the complaint, but also factual material outside the pleadings. And we, in this case, did, and we have asked the court to include, to rely on such information as the PCOB report, which lays out Section 702 and makes clear that that program is not one of collecting all the nation's e-mail. And more broadly, just on jurisdictional discovery, Mr. Shugart did not raise or ask for jurisdictional discovery until at the earliest, last week, when he filed his reply brief, very belatedly. He did not, in any substantive way, ask for jurisdictional discovery, certainly not from the government in district court. Which one would certainly expect in the ordinary course with a 12B1 motion, since it's not unusual for there to be discovery taken where there are jurisdictional questions, right? Well, but that may be true in certain cases, but it's also not automatic, Your Honor. I understand, but it was a softball to you. I mean, one would expect if he wanted it, since it's a 12B1 motion you filed, that he would have asked for it. Certainly, Your Honor. And I suspect the reason for that is, by the way, as Your Honor mentioned, is that the jurisdictional discovery would involve inquiry into highly classified matters. Yes, which gets me. Let me take you down not a different path, but a different and substantive question. Does the State Secrets Doctrine retain any viability? Certainly, Your Honor. Oh, absolutely. The State Secrets Doctrine is alive and well. Then it would be available to raise in the course of such jurisdictional discovery? I mean, just in the event that this Court remanded for narrow jurisdictional discovery, this is not game, set, and match for the government. Well, that's true, Your Honor. But I think it would be odd if the Court were to rule that a plaintiff could get jurisdictional discovery, and we don't think, by the way, the standard for jurisdictional discovery has been met, even apart from that. It's hard to know if it's been met if you had never asked for it. Well, let me just amplify that. Again, that was a softball. So he didn't ask for jurisdictional discovery from the government. He did have this motion where he sought to depose Edward Snowden. He might have trouble making that happen. Right. Ask President Putin. He might help. So the district court summarily denied that motion, and he did not on appeal contend that even that denial was an abuse of the district court's discretion. So I really don't think the issue of ---- All right, but that just perhaps makes a persuasive case that if the case were remanded, Mr. Shuchart would have great difficulty carrying his burden for jurisdictional discovery. But I'm not sure it addresses the question of why it shouldn't be held in the first place. Is it just because he waived it? He didn't ask for it? Well, we think he absolutely did waive it. He waived it in district court. He waived it by not raising it until his belatedly filed reply brief in this court. But more importantly, even just looking at the standard for jurisdictional discovery, you can't just say, I want jurisdictional discovery. You have to first state a sufficient complaint, which we don't think this is sufficient, under Iqbal and Twombly. His complaint is that his personal information has been taken by the government without warrant. It's that simple, isn't it? Yes, but no, it's not that simple because his allegations do not support that assertion. If you look at not only the allegations of the – Well, he can't tell you at this point exactly who took it or the date they took it or the time they took it, but he has marshaled some documentary support for the notion that the federal government has a program that intends to gather just that. No, no, he has not. In Amnesty International, by the way, the plaintiffs have a much stronger claim for standing than he does. And in that case, the plaintiffs there contended. And remember – That statute had just been passed, had it not? Well, but the – There was no history with that statute. It was new. Well, that's true, but the disclosures – But he – That only – but that actually cuts the other way because the disclosures that we have made since Amnesty International only confirm that Section 702 is a program of targeted surveillance. And who is it targeted at? Section 702 surveillance is targeted at non-U.S. persons who are located abroad. Those are the people that may be targeted under Section 702. And the argument in Amnesty International was that, look, I communicate with – I have foreign terrorist clients that I communicate with, and I'm worried that you are targeting them and my communications have been incidentally intercepted under Section 702. That was the claim in Amnesty International. Mr. Shugart has no comparable story to tell about how his communications would be likely to be incidentally intercepted under Section 702 in the course of targeting others, which is the only way that his communications could possibly be intercepted under Section 702. Section 702 on its face is, again, it's not about collecting all of the nation's email. It is about targeting the communications of non-U.S. persons located abroad. Mr. Whitaker, have you spoken to the issue of whether or not there is in cases of this nature a higher threshold for purposes of meeting standing? Well, I think as Your Honor pointed out, the Supreme Court in Amnesty International certainly did suggest that. And, I mean, it is ultimately – the language that I quoted is laying down a rule, could we? I mean, I would agree with your use of the word suggest. That is what it seems to me. But I'm struggling to figure out what to make of the language, which is why I've asked both you and Mr. Shugart about it. Well, I think it is – there is a thumb on the scale in such a case. And more broadly, Your Honor, I would also look – the Supreme Court's decision – decisions in Iqbal and Twombly. And I think – I take it what the lessons of those cases are, is that before you get a ticket to discovery in federal court, you need to allege enough facts to suggest that discovery would somehow be fruitful. And I don't think that you can just – by saying – making the bare allegation that there is some undisclosed, unacknowledged bulk collection program of – collecting of all domestic email is – or some other unacknowledged program, is not enough factual matter to get a ticket to discovery in federal court. I'm happy to answer further questions. Thank you very much, Mr. Miller. And, Mr. Shugart, you have rebuttal. Why didn't you ask the district court for jurisdictional discovery? I did in the sense that I am the only person in the United States that has asked to take the deposition of Edward Snowden. That's not going to happen, right? I mean, that's – there's much about your brief that suggests this is a serious challenge, but, frankly, that attempt starts looking like tilting at windmills, doesn't it? Do you really have any hope or expectation of getting Mr. Snowden to return to the United States? Even if the district court had granted you the relief, realistically, how would you have availed yourself? I took a look at the federal rules, and I believe that the deposition could be taken by means of telephone with court authority. Mr. Snowden has been speaking all over the world to the German parliament, to numerous – he's done a TED Talk. He is very, very accessible. Would he still be willing to submit to your deposition? I believe that it would be very easy to get him to comply. I think he would be delighted to be able to speak to the courts. Assuming for a minute that you did request. I did. It was denied without – Assuming – listen to me. I haven't finished. I'm sorry, Your Honor. And it was denied. You didn't raise that on appeal before this court. You only raised two issues. Not one of them is not that you were denied jurisdictional discovery. So what are we to do with that? With all of our previous precedent in which we've said you must, number one, raise the issue, and you must argue it. You didn't raise it. I believe that that issue is incorporated within the broader standing argument. You can try to convince my colleagues. Okay. You never convinced me. Okay. The broader standing argument was have I, Elliot Shucart, shown that this is a plausible claim? Today I stand here absolutely flabbergasted that the government would stand up here and say that this is a targeted program. I have affidavits and statements from Woodar Revinson, who had to shut down his confidential e-mail service because the government wanted the access codes for all 410,000 accounts, because they wanted the full content of all e-mail being circulated by LavaBit. I have affidavits by William Binney saying, I worked in the government, and my colleagues tell me that this is going on. I have affidavits from a fellow named Thomas Drake saying exactly the same thing. I have personal knowledge of certain things which have not yet disclosed to the court for fear of criminal liability. This is an easy, easy case to prove. So if the court were to exercise its authority here, and I'm proposing to hand you a massive amount of power to straighten out a gross abuse and make sure that the republic is on a sound track for the foreseeable future, jurisdictional discovery is not a problem. I know exactly where to get that information. This is a very, very easy case to prove. I believe that the other... But why didn't you ask for it below? I guess your answer is, I pleaded that they're gathering my data. Right. I pleaded that it's not targeted. Right. Just because they stand up here now and say, trust us, it is targeted. Right. That's not a sufficient answer at the pleading stage. Is that the crux of your argument? That's correct. Then if we agree with you and we remand it, then what happens? Then don't you need to marshal, or do you just move to the summary judgment phase and then you have to try to get Snowden and Binney and Drake and all these others to get you admissible evidence that can get you over the summary judgment threshold? That's correct. I'm proposing that this be remanded for confidential discovery so that I can show that this is going on, so that we can gently nudge this system to a more stable system, so that we can keep a handful of people out of the private email of the investment banks. There's going to be massive problems if this is not dealt with. I'm one of the few people in the United States that fortunately had the knowledge as a lawyer and the knowledge as this issue and the knowledge of what was really going on and the ability to get it this far. It's been difficult for many other people to do that because they didn't have the requisite skill set, but we've managed to create this moment for me to make this plea. But yes, I'm seeking limited discovery, completely confidential. We'll keep this completely out of the newspapers, and you guys will have complete control over how far we take this and what remedy would ultimately be done. But I'm saying if you punt now, you're throwing away a massive opportunity to make this a safer issue. The system now is not stable. All right. Thank you very much. Thank you, sir. Thank you, Mr. Whitaker, both of counsel, for excellent arguments in a case that not only presents contemporary issues of considerable importance and controversy, but also some basic jurisdictional grist, which is primarily of interest to judges but by no means is unimportant. So we thank you both. We'll take the matter under advisement. I'll also ask that a transcript of oral argument be prepared. Thank you. Thank you, sir.